IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| DARRELL N. RICHARD, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No. 07-1259-KI |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| KEN BORDER, SUSAN MCFARLAND | ) | |
| GREIG BUSTOS, and CHRISTINA | ) | |
| DOOLITTLE, | ) | |
| | ) | |
| Defendants. | ) | |
| ———————————————— | ) | |

Darrell N. Richard
Lane County Adult Corrections Facility
# 1113078
101 West 5th Avenue
Eugene, Oregon  97401

    Pro Se Plaintiff

Page 1 - OPINION AND ORDER

Liane I. Richardson
Assistant County Counsel
Lane County Office of Legal Counsel
Courthouse/PSB
125 East Eighth Avenue
Eugene, Oregon 97401

    Attorney for Defendants


KING, Judge:

    Plaintiff Darrell Richard alleges that several Probation and Parole Officers ("PPO") for

Lane County violated his First Amendment rights by requiring him to live at the Eugene Mission,

which requires attendance at a church service, as a condition of his post-prison supervision.

<h3 align="center">FACTS[1]</h3>

    Richard's probation was revoked and he was sentenced to 180 days in custody and one

year of post-prison supervision.  PPO Lopez interviewed Richard about his release plan while

Richard was still in custody.  He told PPO Lopez that he wanted to live at the Eugene Mission

("Mission") when he was released.  Prior to his probation revocation, Richard had given reports

to his PPO stating that he was living at the Mission.  The Mission requires everyone staying

overnight to attend the nightly one-hour nondenominational church service.

---

    [1] These facts are taken from Defendants' Concise Statement of Facts and supporting
evidence.  Nothing Richard filed after defendants filed their Motion for Summary Judgment
responded in an understandable way to the motion.  Richard did appear for deposition but refused
to answer very reasonable questions and made it clear that he would lie under oath to someone
representing a "confederate government."  If I was unable to dismiss this case on the merits for
the reason discussed below, I would have granted Defendants' Motion for Sanctions to the extent
that I would have given Richard a final chance to cooperate with defendants' discovery efforts or
face dismissal of his claim as a sanction.

Page 2 - OPINION AND ORDER

Once released, Richard checked into the Mission a few times but did not stay overnight there. When questioned by his PPO, Richard's story changed about where he was living. The PPO told Richard that if he provided another address, he could live there once it was approved. Richard refused to provide an alternative living arrangement.

Richard was sanctioned three times for various violations, including changing residences without prior approval of his PPO. After the third arrest, Richard told the PPO that his constitutional rights were violated by requiring him to stay at the Mission. He never told the PPO that he objected to staying at the Mission on religious grounds.

## LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the evidence is viewed in the light most favorable to the nonmoving party. Universal Health Services, Inc. v. Thompson, 363 F.3d 1013, 1019 (9th Cir. 2004).

## DISCUSSION

Compelling a probationer to attend a program rooted in religious faith violates the First Amendment. Inouye v. Kemna, 504 F.3d 705, 712-714 (9th Cir. 2007). Inouye's situation is easily distinguishable from Richard's, however. Inouye, a Buddhist, was required to participate in Alcoholics Anonymous and Narcotics Anonymous ("AA/NA") meetings as a condition of his

parole. This was in spite of the fact that he had previously sued state prison officials over his placement in religion-based drug treatment programs while in prison. Prior to Inouye's release on parole, his attorney sent a letter to the state Paroling Authority expressing his opposition to placement in a religion-based treatment program as a condition of parole. Id. at 709-10. In spite of his clear objection, Inouye was ordered to attend AA/NA meetings and, when he refused to participate, his parole was revoked.

In contrast, Richard asked to live at the Mission as part of his release plan. Once it appeared that Richard was not willing to live there, his PPO made it clear that Richard could propose another living arrangement which would be acceptable if it was approved. Richard never told the PPO that he had a religious objection to being assigned to the Mission. He never proposed another living arrangement and refused to tell the PPO where he was living, even though he was clearly living elsewhere. It was not until his third arrest for violations did Richard vaguely mention that the Mission assignment violated his constitutional rights. Based on reading part of Richard's deposition transcript, it is difficult to understand the meaning of his statements.

There is no evidence that Richard asked to live elsewhere at a specific location or even gave warning of the First Amendment violation. He asked to live at the Mission and did not request a change in a way that could be acted upon by the PPO. Compare Richard's situation to Inouye's:

> Inouye had objected in advance of parole to such a program but was assigned to participate in one anyway, and was also "ordered" to continue in the program after threatening to sue program officials. There is no evidence that Inouye was ever told that he had a choice of program. Under these circumstances, a jury could infer that participation was coerced rather than voluntary.

Id. at 711.  I distinguish Richard's situation from that in Inouye and conclude that Richard was not compelled to live at the Mission, that he voluntarily chose the living assignment, and thus, that the living assignment did not violate the Establishment Clause.

For these reasons, I grant summary judgment and dismiss Richard's First Amendment claim.

## CONCLUSION

Defendants' Motion to Compel Discovery (#16) and Defendants' Motion for Discovery Sanctions (#17) are moot.  Defendants' Motion for Summary Judgment (#19) is granted.  This action is dismissed with prejudice.

IT IS SO ORDERED.

Dated this _____17th_____ day of November, 2008.


    ____/s/ Garr M. King_____
    Garr M. King
    United States District Judge